MICHAEL RAY HARRIS (DC Bar # CO0049)
JENNIFER BARNES (DC Bar # CO0056)
Friends of Animals
7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112
Telephone: (720) 949-7791
michaelharris@friendsofanimals.org
jenniferbarnes@friendsofanimals.org

*Attorneys for Movants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA


| | | |
|---|---|---|
| SAFARI CLUB INTERNATIONAL, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 11:15-cv-1026-RCL |
| | ) | |
| SALLY JEWELL, *et al.*, | ) | |
| | ) | |
| Defendants, and | ) | |
| | ) | |
| FRIENDS OF ANIMALS, | ) | |
| 777 Post Road, Suite 205 | ) | |
| Darien, CT 06820; and the | ) | |
| ZIMBABWE CONSERVATION TASK FORCE | ) | |
| 3 Fairbairn Drive, Mount Pleasant, Harare, | ) | |
| Zimbabwe, Africa, | ) | |
| | ) | |
| Movants/Proposed Defendant- | ) | |
| Intervenors. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FRIENDS OF ANIMALS' AND ZIMBABWE CONSERVATION TASK FORCE'S MOTION TO INTERVENE AS DEFENDANTS

## INTRODUCTION AND SUMMARY OF ARGUMENT

In this action, Plaintiffs, the Safari Club International and the National Rifle Association(collectively, "Sport-Hunters")  challenge the United States Fish and Wildlife Service's ("FWS") March 26, 2015, finding that continued the U.S. ban on the importation of sport-hunted African elephants from Zimbabwe ("2015 Importation Ban"). This action is a companion case to 14-Civ-00670, in which the Plaintiffs have challenged FWS's July 22, 2014 initial determination, pursuant to Section 10 of the Endangered Species Act (and FWS implementing regulations), that the sport-hunting of African elephants (*Loxodonta africana)* in Zimbabwe, and the subsequent importation of sport-hunted elephant trophies from that country in to the United States, would not enhance the survival of the species in the wild (the "Enhancement Finding"). Friends of Animals ("FoA") and the Zimbabwe Conservation Task Force ("ZCTF") (collectively, "Movants") were granted defendant-intervenor status under Federal Rule of Civil Procedure 24(a) in 14-Civ-00670.

## THE MOVANTS

### A.  Friends of Animals.

FoA is a nonprofit, international animal advocacy organization incorporated in the state of New York since 1957. Declaration of Priscilla Feral (filled concurrently herewith and hereinafter "Feral Decl.") at ¶ 2. FoA seeks to free animals from cruelty and exploitation around the world, and to promote a respectful view of non-human, free-living and domestic animals. *Id*. FoA has approximately 200,000 journal subscribers and members in the United States and internationally.  *Id.* FoA has a long-standing commitment to protecting animals imperiled due to poaching, sport-hunting, and other animal-exploitation markets. *Id.*

Since 1991, FoA has been closely involved in species conservation and recovery projects in Africa, including providing funds and equipment for conservation related projects and to combat poaching on the continent. *See* Feral Decl. at ¶4. In particular, FoA

members and staff has been actively involved in African elephant conservation for more than twenty years. Feral Decl. at ¶5. FoA was one of the organizations originally involved in drafting a proposal that world leaders, pursuant to the Convention on International Trade in Endangered Species of Wild Fauna and Flora ("CITES"), impose a worldwide ban on trade in elephant ivory. *Id*. FoA has also successfully lobbied against proposals to grant ivory quotas to the African countries of Zimbabwe, Namibia, Botswana and South Africa at 11th CITES Conference of the Parties held in Nairobi, Kenya, in April 2000. *Id*. And in 2014, FoA established an African Wildlife Advisory Committee, which among other things, works directly with individuals and organizations (like the ZCTF) to conserve African wildlife, including elephants, in their native ranges. Feral Decl. at ¶ 7.

For over a decade now, FoA has worked to expose the impact that the sport-hunting of threatened and endangered species has had on African wildlife. *See* Feral Decl. at ¶¶ 8, 15. Over this time, FoA has invested substantial time and resources in raising public awareness about the negative impacts of sport hunting, as well the negative impacts of legalizing the trade or transport of sport-hunted trophies. Feral Decl. at ¶ 15. FoA's public education and outreach efforts have focused both on its recovery efforts of threated and endangered African wildlife species, and on the falsity of the claim from those who commercially exploit these animals that sport-hunting is the best way to save them. *Id*. When FWS authorizes the importation of sport hunted trophies, FoA has to spend more time and resources educating about the negative impacts of sport hunting and working to conserve the targeted animals.

Additionally, FoA's members regularly observe and photograph African elephants in Zimbabwe. For example, Mr. Rodrigues, a member of FoA and founder of ZCTF, has observed elephants his entire life. Declaration of Johnny Rodrigues (filled concurrently herewith and hereinafter "Rodrigues Decl.") at ¶¶ 2, 3 and 17. He enjoys viewing and photographing elephants throughout Zimbabwe, and has done so in Hwange, Kariba, Gonarezhous, Chiredzi, and Zambesi Valley. Rodrigues Decl. at ¶¶ 17-19. He believes

elephants are wonderful, majestic, highly social and intelligent animals, and that humans have a lot to learn from them. He has also studied how elephants contribute to the ecosystem and promote vegetation through the seeds they eat and defecate.  He has noticed that elephant numbers in Zimbabwe are dropping. He is upset that elephants are hunted for sport and has observed how hunting elephants also has a lasting, negative impact on the remaining animals in his country.  He fears that his ability to view elephants in the future will be compromised if hunting and poaching continue. He also fears that future generations, such as his children (who are also FoA members) and grandchildren, will not have the opportunity to see them in the wild if sport hunting and poaching continues. *Id.*

## B.  The Zimbabwe Conservation Task Force.

ZCTF is a registered NGO in the Republic of Zimbabwe. Rodrigues Decl. at ¶ 2. ZCTF opened its headquarters in Harhare, Zimbabwe, in 2001 under the direction of Mr. Johnny Rodrigues, founder and chairman of the board. ZCTF works with all sectors of society to promote and ensure the sustainability of African wildlife for current and future generations. *Id*. Since its inception as a local group, it has expanded as a major player in the conservation of African wildlife. Most conservation groups left Zimbabwe in the late 1990s, fleeing the country due to internal political strife. ZCTF quickly became one of the foremost wildlife watchdog groups in Zimbabwe. *Id.* ZCTF works with hundreds of volunteers on the ground and abroad, growing on the faith and passion of all of those committed to saving Zimbabwe's wildlife. ZCTF has also worked to prevent the trade of live elephants, as well as prevent the trade of animals that have been killed, and their parts. Rodrigues Decl. at ¶¶ 10-16 and 19-22. Of particular concern to ZCTF is the impact sport-hunting is having on elephants and other wildlife. Rodrigues Decl. at ¶¶ 23-25. ZCTF has observed firsthand how the lack of adequate government planning and regulation, as identified in the Enhancement Finding, is devastating Zimbabwe's elephants. Rodrigues Decl. at ¶¶23-25.

## LEGAL STANDARD FOR INTERVENTION

Federal Rule of Civil Procedure 24(a)(2) provides that, "[o]n timely motion, the court must permit anyone to intervene" who: claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest. Fed. R. Civ. P. 24(a)(2). The Court evaluates motions through a four-part test: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interest." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (internal quotations and citations omitted). *See also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). Notably, the DC Circuit Court of Appeals takes "a liberal approach to intervention." *Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) (citing *NRDC v. Costle*, 561 F.2d 904, 910-11 (D.C. Cir. 1977)).

## ARGUMENT

### A.   Movants are entitled to Intervene as a Matter of Right.

#### *1.   This Motion is Timely.*

In considering whether a Motion to Intervene is timely, the Court must consider several factors, including the "'time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case.'" *United States v. British American Tobacco Australia Serv.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006) (*quoting United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir.1980)).  This case was filed on June 20, 2015. The Court held a status conference on July 21, 2015, to address consolidation of this action with Civil Action No. 00670. The Movants were invited to participate in that conference, and were included in the negotiations

regarding the scheduling order presented to the Court at that time. The scheduling order, which was entered by the Court after the status conference, includes Friends of Animals as a participant. (14-cv-00670 (ECF 76)). Given the procedural poster of this case, and that the "major substantive issues in this case have not yet been argued or resolved," it cannot be said that the Motion to Intervene is untimely or would work to prejudice the existing parties. S*ee Admiral Ins. Co. v. Nat'l Cas. Co.*, 137 F.R.D. 176, 177 (D.D.C. 1991).

> 2.   *Movants have an interest in this litigation.*

To intervene as of right, the movant must have an interest relating to the property or transaction that is the subject of the litigation. Fed. R. Civ. P. 24(a)(2). This "interest test" is not a rigid standard; rather, it is "a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967); *see also Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 69 (D.D.C. 2006) ("[P]roposed intervenors of right 'need only an interest in the litigation—not a cause of action or permission to sue.'")(citation omitted).  As such, "the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers,* 473 F.2d 118, 130 (D.C. Cir. 1972).

Mr. Rodrigues lives in Zimbabwe. As set forth in his declaration in support of the Motion to Intervene, his current profession (which he has engaged in since 2001) is to actively work to protect Zimbabwe's elephants and other wildlife for the benefit of current and future generations. *See* Rodrigues Decl. at ¶ 2. He works with other organizations to promote protection of Zimbabwe's elephants; he works with supportive government partners in Zimbabwe to enhance elephant habitat; he obtains and disseminates information about Zimbabwe's elephants; and he works directly on projects to enhance physical protections to reduce poaching of Zimbabwe elephants. *Id.* at ¶¶ 10-16. More importantly, "his entire life he has been able to view elephants." *Id.* at ¶ 17. In would be

hard to find someone with more of an aesthetic, recreational and professional interest in the elephants of Zimbabwe. Indeed, the Court agreed as much in granting Movants intervention in Civil Action No. 0670.

3.  *Movants Interest may be impeded by disposition of this lawsuit.*

The third factor of Rule 24(a)(2) requires the applicant to demonstrate that the "disposition of the action **may** as a practical matter impair or impede the Movants ability to protect its interests." Fed. R. Civ. P. 24(a)(2) (emphasis added). In evaluating this factor, the Court is to look at "the 'practical consequences' of denying intervention." *Fund for Animals v. Norton*, 322 F.3d at 735 (D.C. Cir. 2003). In particular, intervention is appropriate if denial of such a motion would make it more "difficult or burdensome" for the applicant to protect its interests. *Id.* Such an inquiry "'is not limited to consequences of a strictly legal nature.'" *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir 1995) (*quoting Natural Res. Defense Council v. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)). Courts have also found that where the government's decision is favorable to the proposed intervenor, as is the case here, and the challenge threatens to attack that decision directly, intervention is warranted. *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 14 (D.D.C. 2010). Likewise, it has been found that where a plaintiffs seeks relief that would constrain an agency in subsequent proceedings (such as future endangerment finding for importation of African Elephant trophies), the interests of an interested party are impaired. *See Sierra Club v. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993) (decision could impair regulated party in subsequent agency proceedings because decision would "constrain" and have "controlling force" on issues in subsequent agency proceeding).

Disposition of this lawsuit could affect Movants and their members' interests in several ways; it could directly cause the death of the animals that Movants' and their members enjoy viewing. As a practical matter, the Sport-Hunters' requested relief— vacature of the 2015 finder—is very likely to lead to more Americans going to Zimbabwe to

hunt African elephants. *See* Complaint, 15-cv-1026, at¶ 13; s*ee also Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 733-34 (D.C. Cir. 2003) (finding connection between regulation of import permits for sport hunted trophies and the amount of sport hunting that occurs). If these hunts are resumed, FoA member and ZCTF founder, Mr. Rodrigues, fears that his ability to view elephants in the future will be compromised. Rodrigues Decl. at ¶ 21. The same is true for FoA staff and members who visit Zimbabwe. Feral Decl. at ¶¶ 6-7.

Moreover, the Enhancement Finding made by FWS makes it virtually impossible for FWS to make the necessary findings to issue a permit to import an African elephant trophy from Zimbabwe whether or not there is a "ban" in place. If a sport hunter were to apply for such a permit today, it would seem highly unlikely FWS would grant it. And if the agency did, it would almost certainly be arbitrary and capricious **unless** the agency also determines that the management deficiencies cataloged in the July Enhancement Finding have been cured. There is, of course, nothing in the record before the Court to suggest that those deficiencies are going to be corrected anytime soon. The 2014 and 2015 Enhancement Findings continues to protect Mr. Rodrigues interests and will continue to do so for the foreseeable future.

4.   *The current parties do not adequately represent Movants' interests.*

Because Movants have a significant protectable interests that may be impaired by the disposition of this litigation, they have the right to intervene as long as their interests **may** not be adequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2). Only a "minimal" showing is required to establish this element. *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972). The D.C. Circuit has described this requirement as "not onerous." *Fund for Animals*, 322 F.3d at 735 (quoting *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir . 1986)); *see also id.* at 736 n.7 ("[T]he standard for measuring inadequacy of representation is low . . ..". Indeed, an applicant "'ordinarily should be allowed to intervene unless it is clear that [a] party will provide adequate representation

for the absentee[.]'" *Fund For Animals*, 322 F.3d at 735 (quoting *American Tel. & Tel. Co.*, 642 F.2d at 1293).

The D.C. Circuit has "often concluded that governmental entities do not adequately represent the interest of aspiring intervenors." *Fund For Animals*, 322 F.3d at 736-37; *see also People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993) (government's mandate to design and enforce an entire regulatory system precludes it from adequately representing one party's interest in it). Here, FWS's obligation is to represent the interests of the American people as a whole, while the Movants' concern is for the conservation of African elephants as a species and as individuals. While there may be some overlap in these interests that does not mean that FWS will adequately represent Movants' interests. *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

Indeed, the Movants are steadfast against the sport-hunting of African wildlife, and as noted, have worked to catalog for the public and decision-makers the growing body of research documenting the impact such activity can have on wild populations. Movants are in the best position to defend the Enhancement Finding on that basis, whether on the merits or in the unlikely case the Court finds that the Enhancement Finding should be remanded to the agency and must address whether or not to enjoin FWS from implementing the finding while on remand. On the other hand, as evidenced in the Enhancement Finding, FWS appears to believe that sport hunting can, in some case, be a viable conservation method; this alone highlights that the agency may not present a vigorous defense to the sport-hunters' claims, or may settle in a way that commits FWS to a new policy that injures the interest of African elephants and the Movants. Thus, the current parties do not adequately represent Movants interest.

*5.   Movants have standing to intervene as defendants.*

This Court has found that "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, [it] must satisfy the standing

requirements imposed on those parties."[1] *Cnty. of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 43 (D.D.C. 2007) (citing Fund for Animals, 322 F.3d at 732) (quoting *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994)). Constitutional standing requires a party to show that: (1) it has suffered an injury in fact, which is concrete and particularized and actual or imminent; (2) there is a causal connection between the injury and the challenged action; and (3) the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Here, Movants satisfy all three prongs.

An organization may establish standing based on the injuries it suffers directly, the injuries suffered by its members, or both. *Equal Rights Ctr. v. Post Props. Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011). Where an organization asserts standing on behalf of its members, the organization "must demonstrate that at least one member would have standing under Article III to sue in his or her own right, that the interests it seeks to protect are germane to its purposes, and that neither the claim asserted nor the relief requested requires that an individual member participate in the lawsuit." *Natural Res. Def. Council v. EPA*, 489 F.3d 1364, 1370 (D.C. Cir. 2007) (*citing Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333,

---

[1] To the extent that the D.C. Circuit Court of Appeals or this court has required proposed **defendant**-intervenors to demonstrate standing, Movants believe such a requirement to be in error and inconsistent with Supreme Court precedent. Standing is a doctrine intended to act as the court'sgatekeeper: a party must demonstrate standing to "invoke the court's jurisdiction" in the first instance. *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003). But once jurisdiction is properly invoked, courts have regularly allowed other parties to participate. For example, with respect to adding plaintiffs after initiation of the lawsuit, the Supreme Court has recognized the principle that standing of one is standing for all. That is, Article III standing is generally satisfied so long as one plaintiff already in the case has standing. See Watt v. Energy Action Educ. Found., 454 U.S. 151, 160 (1981). Thus, it makes no sense to require a proposed plaintiff-intervenor to demonstrate a constitutionally mandated interest that is equivalent to the interest required of the first plaintiff that invoked the court's jurisdiction. And more to the point, it is just odd that some courts have required a showing of standing by a proposed defendant-intervenor in order to gain entry into a lawsuit. As at least one Justice in this Circuit has wondered aloud, why should any defendant be subject to a doctrine that is directed at parties seeking to commence litigation, i.e., plaintiffs? *Roeder*, 333 F.3d at 233.

342-43 (1977)).  An organization establishes standing on its own behalf when it shows that the defendant's conduct or, as here, the plaintiff's conduct, "prompts an organization to increase [ ] the resources [it] must devote to programs independent of its suit." *Equal Rights Ctr.*, 633 F.3d at 1138. An organization has standing on its own behalf when "the defendant's actions 'perceptibly impaired' the plaintiff organization's programs by making its 'overall task more difficult.' " *Id.* at 1139 (*quoting Fair Emp't Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994)).

Movants have standing as organizations, and through their members. The facts described above in support of Movants motion to intervene are more than sufficient to demonstrate that Movants and its members have standing. Movants have significant interest in this case as they are dedicated to the conservation of African elephants and ending sport-hunting. Moreover, Movants members enjoy observing and photographing elephants in Zimbabwe, and the value of this experience is lessened and at risk if the Sport-Hunters receive their requested relief. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562-63 (1992) (explaining that "[t]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing."); *see also Friends of the Earth Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) ("[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity") (citations omitted)). Notably, the D.C. Circuit has recognized that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 70 (D.D.C. 2006) (*quoting Roeder v. Islamic Republic of Iran*, 357 U.S. App. D.C. 107, 333 F.3d 228, 233 (D.C. Cir. 2003)).

Movants' injury would be caused by Sport-Hunters' requested relief, which seeks to once again open the door to import sport hunted elephants from Zimbabwe . Such an injury could be redressed by the Court if it upholds the Enhancement Finding.

**B.      Movants Satisfy the Standard for Permissive Intervention.**

If this Court denies intervention as of right, Movants respectfully request that the Court allow them to intervene under Rule 24(b). Permissive intervention is appropriate when an applicant's timely claim or defense "shares a question of law or fact in common with the underlying action and if the intervention will not unduly delay or prejudice the rights of the original parties." *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004) (citing Fed. R. Civ. P. 24(b)).

Here, Movants meet the Rule 24(b) standard. Movants have a significant interest in the conservation of African elephants. Because this case is in its early stages, and there has been no briefing regarding the merits of the case, intervention will not cause any undue delay or prejudice to the existing parties. Given the importance of the issues involved in this case and Movants' interest in protecting African elephants from sport hunting in Zimbabwe, the Court should allow permissive intervention.

CONCLUSION

For the reasons set forth above, Movants, Friends of Animals and the Zimbabwe Conservation Task Force, respectfully request this Court grant them intervention as of right, or alternatively, permissive intervention.

Respectfully submitted this 16th day of August, 2015.

/S/ Michael Harris
Michael Ray Harris (DC Bar # CO0049)
Jennifer Bares (DC Bar # CO0056)
Friends of Animals
7500 E. Arapahoe Road, Suite 385
Centennial, Colorado 80112
Telephone: 720-949-7791
michaelharris@friendsofanimals.org

jenniferbarnes@friendsofanimals.org


*Attorneys for Movants*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing, FRIENDS OF ANIMALS' AND ZIMBABWE CONSERVATION TASK FORCE'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO INTERVENE AS DEFENDANTS, was served upon all counsel of record through the ECF system this 16th day of August, 2015.


/s/ Michael Harris
Michael Ray Harris (DC Bar # CO0049)