MICHAEL RAY HARRIS (DC Bar # CO0049)
JENNIFER BEST (DC Bar # CO0056)
Friends of Animals
7500 E. Arapahoe Rd., Suite 385
Centennial, CO 80112
Telephone: (720) 949-7791
michaelharris@friendsofanimals.org
jennifer@friendsofanimals.org

*Attorneys for Defendant-Intervenors*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SAFARI CLUB INTERNATIONAL, *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SALLY JEWELL, *et al.*, ) <br> ) <br> Defendants, and ) <br> ) <br> FRIENDS OF ANIMALS, ) <br> 777 Post Road, Suite 205 ) <br> Darien, CT 06820; and the ) <br> ZIMBABWE CONSERVATION TASK FORCE ) <br> 3 Fairbairn Drive, Mount Pleasant, Harare, ) <br> Zimbabwe, Africa, ) <br> ) <br> Defendant-Intervenors. ) <br> ) | Case No. 11:15-cv-1026-RCL |

**INTERVENORS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGEMENT**

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant-Intervenors, Friends of Animals and the Zimbabwe Conservation Task Force, submits this memorandum in opposition to the Plaintiffs' pending motion for summary judgment. Through their motion, the Plaintiffs ask the Court to vacate the United States Fish and Wildlife Service's (FWS) April 4, 1014, July 22, 2014, and March 26, 2015 Findings that trophy hunting of African elephants in Zimbabwe cannot be deemed to enhance the survival of that species. Plaintiffs' Motion for Summary Judgment (DOC 1) at 1-2, 64. Plaintiffs argue on various grounds that the findings violate the federal Endangered Species Act and/or was made arbitrarily or capriciously. *Id*. at 1-2. The Federal Defendants have opposed Plaintiffs' motion and filed a cross-Motion for Summary Judgment asking the Court to uphold the Enhancement Findings and deny the Plaintiffs all requested relief.

Pursuant to the Court's minute order of November 9, 2015, Intervenors "may incorporate by reference any arguments of the federal defendants but shall not repeat any of their arguments." Accordingly, Intervenors hereby do incorporate by reference all of the Federal Defendants arguments in opposition to the Motion For Summary Judgment, except with one notable exception—**Intervenors disagree with the federal government that the Findings are "adjudications" that are not subject to the notice and comment requirements of the Administrative Procedure Act (APA)**. **They are in fact rulemakings**.

In making their arguments, Federal Defendants assert that while both adjudications and rulemakings have legal consequences, the two are distinguished in that rules "only have future legal consequences." Federal Defendants Joint Memorandum (Doc 34-1) at 28. In the government's view, the Enhancement Findings are retroactive because, although the effective date of the import ban is April 4, 2014, the date of the first Finding, FWS did not publish any Finding until July 31, 2014. Under its logic, the government concludes that because the published finding applies retroactively, then this must be an adjudication. This conclusion is in erroneous for three reasons.

First, the government's logic is just pure bootstrapping. One cannot simply publish a decision months after making it, and then call it a retroactive adjudication. Notably, under the APA there isn't even a requirement to publish the results of informal adjudications before they become effective. *See* 5 U.S.C. § 702 (a)(2).

Second, there is nothing retroactive at all regarding the Findings. Collectively, these Findings prohibit the import of any trophy hunted elephant from Zimbabwe that was killed on or after April 4, 2014, the date the first Finding was issued without notice and comment. They do not require anything of anyone who may have killed an elephant before that date. Indeed, elephants killed before April 4, 2014, can be lawfully imported in this country.

Third, the Federal Defendants badly misconstrue the distinction between rules and adjudications under the APA. While it is true that rulemakings are nearly always prospective in nature, that characteristic is not the defining difference. Rulemaking involves, as the name implies, the issuance of agency rules and regulations, which are defined as "statements of general applicability prescribing law or policy." UNITED STATES DEPARTMENT OF JUSTICE, ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT 14-15 (1947), *available at* [https://archive.org/details/AttorneyGeneralsManualOnTheAdministrativeProcedureActOf1947](https://archive.org/details/AttorneyGeneralsManualOnTheAdministrativeProcedureActOf1947)*.* Adjudication, on the other hand, involves the issuance of agency orders, which can be defined as statements of **particular applicability** to determine the rights of **specified parties** that then may be relied upon by agencies as precedent. *Id*.

This is not to say that this procedural violation by the government is grounds for granting the Plaintiffs' Motion for Summary Judgement and/or overturning the Enhancement Findings. As the record before the Court demonstrates, FWS's procedural failure to publish notices and take comment for any of the three Findings was harmless for either of two reasons. First, in all likelihood, Plaintiffs had actual notice of both the April 4 and July 22, 2014 Findings. Other pro-hunting organizations that are closely aligned with the Safari Club International, like the group Conservation Force, actually submitted

comments to FWS opposing the Findings before they were published on July 31, 2014. Second, even if the Plaintiffs were prejudiced in their ability to participate in the 2014 Findings, such prejudice was cured in that, by their own admission, the Safari Club International submitted comments on the proposed 2015 Finding, including providing substantive data and information. Likewise, FWS made it clear that it took that information into account before issuing the March 26, 2015 Finding. In such circumstances, this Circuit has long held that failure to follow the notice and comment rules is harmless error.

FWS's failure to provide for notice and comment rulemaking is relevant, however, to the question of remedy in the unlikely case the Court finds the Enhancement Findings violated the ESA or APA on one of the other grounds alleged by the Plaintiffs. As an initial matter, the Court is allowed to take into account equitable considerations when deciding whether to vacate a final agency action, or merely remand the decision back to the agency for additional consideration. In this regards, while the Plaintiffs were not prejudiced by the agency's procedural failure to provide for notice and comment, Friends of Animals and Zimbabwe Conservation Task Force were in that they had no prospective notice of any of the proposed Findings and no opportunity to present to the agency information in their possession to support the decision to refuse to make a finding that trophy hunting of elephants in Zimbabwe is enhancing the species.

Accordingly, Intervenors ask the Court to deny the Plaintiffs' Motion to Dismiss primarily on grounds set forth in the Federal Defendants' Opposition and Cross-Motion and that any violation of the notice and comment provisions of the APA were, as to the Plaintiffs, harmless error. If, however, the Court finds any aspect of the Enhancement Findings to be arbitrary, capricious, or not in compliance with the law, Intervenors ask the Court to keep the Findings in place and remand them to FWS for further consideration, with the proviso that FWS must provide for adequate public participation on remand.

4

**ARGUMENT**

A.      **The Enhancement Findings Are "Rules" Subject To Notice And Comment.**

In the terms of the APA, a rule is "an agency **statement of general . . . applicability** and future effect designed to implement . . . or prescribe law." 5 U.S.C. § 551(4)(emphasis added). Conversely, an adjudication under the APA determines rights and duties of individuals and includes both an agency process and the right of any aggrieved person to seek review by a court. 5 U.S.C. § 702; *Chicago & Southern Air Lines v. Waterman Steamship Corp.*, 333 U.S. 103, 113 (1948)(administrative orders are reviewable when they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process). The Enhancement Findings are rules for two reasons.

First, the government is simply wrong that the Enhancement Findings are not solely prospective in nature. The Findings do not prohibit the actually killing of an elephant in Zimbabwe, or provide for any consequences associated with such a killing whether on or after the date the Findings were issued. What they do is to make the import of any elephant trophy from Zimbabwe illegal after that date: "the Service is taking a precautionary approach to the imports of sport-hunted trophies from Zimbabwe and providing U.S. hunters with notice that, while no import permit is currently required for the import of sport-hunted trophies, such imports cannot occur at this time." AR 89 at 003656. Notably, FWS actually stated that it would consider allowing an exception to this ban for certain elephants killed before the first Finding was issued. *See* AR 201 at 003818 (noting that hunters who hunted an African elephant in Zimbabwe prior to April 4, 2014 may import their elephant trophy if they can provide adequate documentation to show that the elephant was taken before the effective date of the suspension).

Second, the Findings are not resolutions of individual rights and duties; they are statements of law with general applicability. True, they apply only to those wishing to kill elephants in Zimbabwe—which may or may not be that many people. But they also apply to those seeking to protect them, and those who want to see our conservation laws enforced.

More importantly, they facially apply to everyone. It should also be noted that many rules on the books regulate far fewer, but were still subject to notice and comment. For example, a whole set of rules under the Clean Air Act apply only to coal-fired power plants. Each one of which was open to public participation. *See, e.g.*, 80 Fed. Reg. 64,662 (Oct. 23, 2015).

B.  **FWS's Failure To Use Notice And Comment In Issuing The Enhancement Findings Did Not Prejudice The Plaintiffs, And, Thus, Is Harmless Error As To Them.**

The DC Circuit has repeatedly conducted some form of harmless error analysis when it has determined that an agency failed to comply with the APA's notice and comment requirement. *See AFL-CIO v. Chao,* 496 F.Supp.2d 76, 88 (D.C. Cir. 2007). Accordingly, even if the agency has not given notice in the statutorily proscribed fashion, actual notice will render the error harmless. *See Small Refiner Lead Phase-down Task Force v. EPA,* 705 F.2d 506, 549 (D.C. Cir.1983) (*citing Sierra Club v. Costle,* 657 F.2d 298, 355, 360, 398-99 (D.C. Cir. 1981)).

Here, while it is certainly the case that FWS failed to publish advance rulemaking notice for any of the three Findings, there is evidence in the record that pro-hunting organizations had actual notice of the Findings sometime before July 31, 2014. In the Final 2014 Enhancement Finding published in the Federal Register in July 31, 2014, FWS recognized that it received and considered comments from pro-hunting organizations and others connected to the hunting industry in Zimbabwe or southern Africa. FWS acknowledge that their "finding is the result of an analysis of this more recent information from Zimbabwe and other sources." AR 206 at 004507-4516.

Moreover, it is clear that the Plaintiffs took steps to obtain relief from the April 4 and July 22 Findings, and to persuade FWS not to renew the Finding for 2015. Plaintiffs have clearly acknowledged that they had the opportunity to comment after July 31, 2015, and did in fact submit comments:

> Throughout 2014 and the first few months of 2015, groups and individuals provided the Service with substantial additional factual materials concerning elephants in Zimbabwe. For example, Safari Club International sent a letter on January 23, 2015, detailing why the Service should make a positive enhancement finding, and included documents relevant to Zimbabwe's Communal Areas Management Programme for Indigenous Resources ("CAMPFIRE") and anti-poaching efforts in Zimbabwe. AR325.
>
> Another hunting/conservation group submitted several comments opposing the negative enhancement finding, with extensive supporting documentation. AR247-49 (Comments with 863 pages of attachments at AR248-249).

SCI MSJ at 13.

Moreover, those comments were not ignored. In its 2015 Finding, FWS explicitly stated that its finding was based on information from comments received including information from Safari Club International. AR 344 at 007258. After reviewing the comments, the Service even requested clarification of information submitted and requested.

Under such circumstances, FWS procedural failure is harmless error as to the Plaintiffs.

**C.     If The Court Finds That FWS's Making Of The Enhancement Findings Violated Either The ESA Or The APA, The Court Should Remand But Not Vacate The Findings In Order To Protect The Elephants And The Interests Of Friends of Animals, The Zimbabwe Conservation Task Force, and Others Similarly Situated Who Were Denied The Right To Participate In The 2014 and 2015 Decisions.**

The APA directs that a court "shall . . . set aside" any agency action found to be "arbitrary, capricious . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Both the Supreme Court and the D.C. Circuit have held that vacatur is the presumptive remedy for this type of violation. *See Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998) ("If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case."); *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1084 (D.C. Cir. 2001) ("[A plaintiff who] prevails on its APA claim . . . is entitled to relief

7

under that statute, which normally will be a vacatur of the agency's order."). However, courts have also recognized that equitable consideration might require them to keep an agency's decision in place while the agency is given a chance to reconsider the rule. *See, e.g.*, *Chem. Mfrs. Ass'n v. EPA*, 870 F.2d 177, 236 (5th Cir. 1989); *see also Endangered Species Comm. of the Bldg. Indus. Ass'n of S. Cal v. Babbitt*, 275 F. Supp.2d 32, 41 (D. D.C. 1994). Thus, the law in this Circuit directs consideration of two principal factors in deciding "whether to vacate a flawed agency action": "(1) 'the seriousness of the . . . deficiencies' of the action, that is, how likely it is 'the [agency] will be able to justify' its decision on remand; and (2) 'the disruptive consequences of vacatur.'" *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 197 (D.C. Cir. 2009) (quoting *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1048-49 (D.C. Cir. 2002), *modified on reh'g on other grounds*, 293 F.3d 537, 541(D.C. Cir. 2002)) (alterations in original); *see also Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990).

Here, it is important to note that Plaintiffs essentially argue that in issuing the Enhancement Findings FWS acted arbitrarily or capriciously. The Plaintiffs certainly do not claim that FWS legally cannot ever issue a determination that the trophy hunting of elephants in Zimbabwe cannot be found to enhance the survival of the species.[1] Nor can the Plaintiffs seriously claim that the Enhancement Finding is not supported by at least some

---

[1] The closest Plaintiffs' come to claiming that FWS cannot legally issue the Enhancement Findings is in their assertion that the presumption of legality under Section 9(c)(2) of the ESA cannot be rebutted by issuing a special 4(d) rule. Intervenors agree with the government that Plaintiffs' reading of this section is nonsensical. Congress did not intend to tell FWS that it could not use a regulation to rebut the presumption. Section 9(c)(2) is best read, as the government suggests, to mean that generally import of non-endangered, Appendix II animals is presumed legal under the statute and its implementing regulations, unless a specific regulation is issued rebutting the presumption. But even if the Court disagrees, Plaintiffs leave open the possibility that on remand FWS can find another way to rebut this presumption as it might apply to Zimbabwe's elephant population. For example, nothing in Section 9(c)(2) would prohibit FWS from issuing a special 4(d) rule for Zimbabwe elephants requiring individual import permits from FWS. Issuance of such permits, which are adjudications, would allow FWS to consider the enhancement issue on a case-by-case basis.

8

evidence. Instead, their *prima facie* case is that in issuing the Findings, the agency failed consider (or misunderstood) relevant information and/or applied wrong legal standards. As such, under the test above, assuming the Court finds an unlikely procedural violation here, remand is an appropriate remedy because it is likely the agency can correct it and because the Findings are facially protective of elephants in a country where serious questions exist as to the adequacy of the government's conversation measures.

Remand without vacature would also be protective of the interests of groups like Friends of Animals and the Zimbabwe Conservation Task Force, who were shut out of the original rulemaking and which can provide information that would factually and legally bolster FWS's Findings. For example, as set forth in his declaration is support of the motion to intervene,[2] Mr. Johnny Rodriguez, the founder and Chairman of the Zimbabwe Conservation Task Force, would be able to provide FWS firsthand information regarding: (1) the ongoing decline of wild elephants in Zimbabwe; (2) the increasing deficiencies in his government's conservation programs; (3) the rise in poaching; and (4) the impact trophy hunting is having on elephants in his country. *See* Rodrigues Decl. at ¶¶ 18-21.

Similarly, as set out in the Ms. Priscilla Feral's declaration,[3] Friends of Animals has worked for more than twenty years on elephant conservation, and is one of the leading advocacy organization working to identify the true impact of trophy hunting on these animals. For decades, pro-hunting organizations have argued that sport hunting provides conservation incentives and financial resources for the recovery of these animals. However, research to validate this theory does not exist, and globally there are an increasing number of reports suggesting that the impact of sport hunting is far more negative. Trophy hunting not only reduces the stigma of killing elephants, it incorrectly suggests that the overall status of these animals in the wild is secure and/or improving. Most importantly, lawful

---

[2] For the convenience of the Court and the parties, a copy of the declaration is attached hereto.
[3] For the convenience of the Court and the parties, a copy of the declaration is attached hereto.

hunting provides a means for poachers to launder their illegal trophies. Feral Decl. at ¶¶ 8-15.

None of this information from the Zimbabwe Conservation Task Force or Friends of Animals was even considered by FWS before issuing the Enhancement Findings, primarily as a result of the agency's failure to follow the notice and comment requirements. Notably, late last year, FWS acknowledged, in response to a request by Friends of Animals, that current trophy hunting policies under CITES and the ESA may fail to adequately account for more recent research on the detrimental aspects of trophy hunting. CITES COP17: ANNOUNCEMENT OF PROPOSED RESOLUTIONS, DECISIONS, AND AGENDA ITEMS BEING CONSIDERED BY THE UNITED STATES; OBSERVER INFORMATION 5-6, *available at* http://www.fws.gov/international/pdf/federal-register-notice-CoP17-FR4-extended-version.pdf. Thus, this information is certainly relevant, and could form the basis for correcting the procedural irregularities or data gaps the Plaintiffs are complaining about.

## CONCLUSION

For the reasons set forth above, Friends of Animals and the Zimbabwe Conservation Task Force respectfully request this Court deny Plaintiffs' Motion for Summary Judgment. However, if the Motion is granted, we request the Court to remand the Enhancement Findings to FWS for further consideration with adequate opportunity for public participation.

Respectfully submitted this 1st day of April, 2016.

>  /S/ Michael Harris
> Michael Ray Harris (DC Bar # CO0049)
> Jennifer Best (DC Bar # CO0056)
> Friends of Animals
> 7500 E. Arapahoe Road, Suite 385
> Centennial, Colorado 80112
> Telephone: 720-949-7791
> michaelharris@friendsofanimals.org
> jennifer@friendsofanimals.org
> *Attorneys for Defendant-Intervenors*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, FRIENDS OF ANIMALS' AND ZIMBABWE CONSERVATION TASK FORCE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS MOTION FOR SUMMARY JUDGMENT, was served upon all counsel of record through the ECF system this 1st day of April, 2016.

>    /s/ Michael Harris
>    Michael Ray Harris (DC Bar # CO0049)